UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERNEST NIEVES,<br><br>               **Plaintiff**<br><br>-v.-<br><br>CITY OF NEW YORK ET AL.,<br><br>               **Defendants** | 15-CV-2227 (ALC)<br><br>**OPINION AND ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Earnest Nieves ("Plaintiff" or "Nieves") brings this action, *pro se*, against the City of New York, Turham Gumusdere, Patricia Feeney, Odetta Williams, Dermot Corcoran, Dr. Anslam Kadri, and Security Captain Bell (collectively "Defendants"). Plaintiff alleges Defendants failed to properly maintain a dorm unit ("1-Top"), located in the Anna M. Kross Center ("AMKC") incarceration facility at Rikers Island, which caused Plaintiff to slip and fall. Plaintiff also alleges that Defendants failed to provide adequate medical care after Plaintiff's slip and fall.

## PROCEDURAL HISTORY

Plaintiff filed this action on March 24, 2015. ECF No. 1. Plaintiff amended his complaint on January 28, 2016. ECF No. 16. On May 12, 2016, Plaintiff filed a Second Amended Complaint ("SAC"). ECF No. 25. Defendants filed a Motion to Dismiss the Second Amended Complaint on September 1, 2016. ECF No. 33. Plaintiff failed to respond to the Motion to Dismiss the Second Amended Complaint, thus the Court deemed Defendants' Motion to Dismiss as unopposed. On August 18, 2018, the Court granted Defendants' Motion to Dismiss on all but one claim. ECF No. 43. Plaintiff's sole surviving claim alleged that Dr. Anslam Kadri failed to

provide adequate medical care after Plaintiff's slip and fall. *Id.* Defendants moved for reconsideration of the Court's decision on September 1, 2018. ECF No. 47. The Court gave Plaintiff multiple opportunities to respond to Defendants' Motion for Reconsideration, which he neglected to do. *See* ECF Nos. 49, 51. However, Plaintiff did move for leave to file a Third Amended Complaint ("TAC") on December 21, 2017. ECF No. 55. After thoroughly reviewing Defendants' Motion for Reconsideration, the Court granted the Motion and dismissed Plaintiff's remaining claim. ECF No. 57. In the same order, the Court granted Plaintiff's Motion to file his TAC. *Id.* On February 27, 2018, Plaintiff filed his TAC. ECF No. 58. On March 13, 2018, Plaintiff filed a Fourth Amended Complaint ("FAC") which was identical to his TAC. ECF No. 59. On April 17, 2018, Defendants filed a Motion to Dismiss the Third & Fourth Amended Complaints. ECF No. 62. Plaintiff responded to the Motion to Dismiss the Third & Fourth Amended Complaints on April 26, 2018, and the Government submitted a final reply on June 19, 2018. ECF Nos. 66, 67. Defendants' Motion to Dismiss the Third & Fourth Amended Complaints is deemed fully briefed. For the reasons set forth below, the Motion to Dismiss the Third & Fourth Amended Complaints is hereby GRANTED.

## BACKGROUND

Although familiarity with the factual background and preceding arguments is assumed, the Court briefly revisits the facts relevant to the disposition of this Motion. The following factual allegations are accepted as true for the purposes of the Motion to Dismiss the Third & Fourth Amended Complaints.

On August 13, 2014, Plaintiff was transferred to the AMKC facility at Rikers Island for pre-trial detainment. SAC ¶ 1, ECF No. 25. At the time he was incarcerated, Nieves had an artificial hip and walked with a cane. *Id.* He was housed in the 1-Top Dorm at AMKC. *Id.* On

multiple occasions, Nieves complained to prison staff about "environmental health hazards" and the general conditions in 1-Top. *Id.* ¶ 1-2. Specifically, Plaintiff informed Security Captain Bell of the problems and requested that he be transferred to a different dorm. *Id.* Bell denied Plaintiff's request, citing security concerns. *Id.* ¶ 2. On February 1, 2015, Nieves sent a letter to the Legal Aid Society detailing the "deplorable conditions" in 1-Top. *Id* ¶ 3. Legal Aid staff attorney Dale A. Wilker forwarded Plaintiff's letter to numerous Department of Corrections officials, including Patricia Feeney, Constituent Services' Assistant Commissioner for Environmental Health. *Id.*

On February 7, 2015, Nieves slipped on a loose floor tile and fell in 1-Top. *Id* ¶ 7. He landed on his artificial hip when he hit the floor. *Id.* Nieves was taken to AMKC Health Clinic and treated by the attending physician, Dr. Kadri. *Id.* Medical records attached to the SAC indicate that Dr. Kadri provided Plaintiff with medication, took x-rays of each area Plaintiff claimed to be experiencing pain (including his hip), and ordered Nieves to stay in the Clinic under supervision. *Id.* at 11, 17-18. Dr. Kadri did not send Nieves to a specialist to determine if he suffered any nerve damage to his artificial hip.[1] *Id.* Two days later, on February 9, 2015, Plaintiff's x-rays were examined by a different provider who found "no fractures or destructive lesions" and his "hip replacement in good position." *Id.* at 36. During a subsequent visit to the Health Clinic on February 9, 2015, Plaintiff complained of right knee pain. *Id.* at 22. Upon examination, there was "no obvious swelling or redness" surrounding his knee. *Id.*

According to the Complaint, despite medication and multiple visits to the Health Clinic, Nieves continued to experience pain. *Id.* ¶ 8. On February 12, 2015, Plaintiff experienced weakness and pain in his right side, leading to an emergency call and hospitalization. *Id.* at 24-

---

[1] Medical records indicate that Plaintiff's February 7, 2015 visit to the health clinic was the only instance that Dr. Kadri treated or interacted with Plaintiff. *See* SAC.

3

28. In the SAC, Plaintiff alleges that he woke up "paralyzed" on his right side. *Id.* ¶ 8. The records indicate that Plaintiff had "an episode of inability to move." *Id.* at 36. The hospital "could not ascertain what [was] wrong[,]" but Nieves was administered a CT scan, which showed his hip replacement with "screws in place." *Id.* at 32-33, 35. He was given pain medication and referred to orthopedic services. *Id.* at 31, 36.

Plaintiff continued to complain of knee and hip pain and was consistently prescribed medication for his discomfort. *Id.* Nieves visited the Health Clinic multiple times after his "episode of inability to move." *Id.* at 36-48. Within two weeks, the medical records indicate that Plaintiff was "walking with a cane" and requesting "renewal for cane and orthopedic shoes." *Id.* Within three weeks Nieves "denie[d] weakness" when complaining of knee and hip pain. *Id.* at 46.

## STANDARD OF REVIEW

To withstand a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint "need not include detailed factual allegations, but must contain sufficient factual matter ... to state a claim to relief that is plausible on its face." *Corona Realty Holding, LLC, v. Town of N. Hempstead*, 382 F. App'x 70, 71 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Incantation of the elements of a cause of action, "supported by mere conclusory statements," is not enough to show plausibility. *Id.* at 72. Nevertheless, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). In particular, "the pleadings of a *pro se* plaintiff must be read liberally and should be interpreted to raise the strongest arguments that they suggest."

4

*Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## DISCUSSION

Upon review, Plaintiff's Third and Fourth Amended Complaints contain no new claims and provide no additional evidence or supporting allegations. For the purposes of judicial efficiency, the Court will forego an in-depth analysis here. The logic and analysis presented by this Court in the Memorandum and Order Granting Defendants' Motion to Dismiss, dated August 18, 2017, sufficiently describes the grounds for granting Defendants' Motion to Dismiss the Third and Fourth Amended Complaint regarding the claims as to Turhan Gumusdere, Patricia Feeney, Odetta Williams, Dermot Corcoran, and Security Captain Bell. *See* ECF No. 43. Additionally, that same Order adequately addresses Plaintiff's Eighth Amendment claim based on conditions of confinement, his Fifth Amendment claim, and his Americans with Disabilities Act claim. *Id.* As to the allegation that Dr. Kadri failed to provide adequate medical care after Plaintiff's slip and fall, this Court's decision is consistent with the analysis set forth in the Reconsideration Order dated January 12, 2018. *See* ECF No. 57.

## CONCLUSION

For the reasons stated above, the Motion to Dismiss the Third and Fourth Amended Complaint is hereby GRANTED as to all Defendants.

**SO ORDERED.**

**Dated:** **November 30, 2018**
**New York, New York**

HON. ANDREW L. CARTER, JR.
**United States District Judge**